IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case Number:


HOWARD BOWE, Sr., and BELINDA RAMOS, as the
Co-personal representatives of the estate of HOWARD BOWE, Jr., deceased,
HOWARD BOWE III, a child of HOWARD BOWE, Jr.,
NB a minor child of HOWARD BOWE, Jr.,
and HB a minor child of HOWARD BOWE, Jr.


          Plaintiffs,

v.

The CITY OF HALLANDALE BEACH, a municipality,
MICHAEL MCKENZIE, individually, PAUL HEISER, individually,
CHRISTOPHER ALLEN, individually,
and MARC DUBUISSON, individually.


          Defendants.
_____/

## **COMPLAINT**

Plaintiffs, HOWARD BOWE, Sr. and BELINDA RAMOS, as mother and father as well as co-personal representatives of the estate of HOWARD BOWE, Jr., sue Defendants, the CITY OF HALLANDALE BEACH and MICHAEL MCKENZIE individually and jointly and severally for the death of HOWARD BOWE, Jr., on behalf of his estate and children. HOWARD BOWE III sues the CITY OF HALLANDALE BEACH, PAUL HEISER, individually, CHRISTOPHER ALLEN, individually, and MARC DUBUISSON, individually and jointly and severally, and say:


## **Jurisdiction**

1. This is an action for damages arising out of violations of federal law and state torts detailed below in an amount greater than $15,000.00.

2. This action is brought pursuant to 42 U.S.C. §§1983, 1988, the Fourth, and Fourteenth Amendments to the United State Constitution, and the tort laws of Florida. Jurisdiction is founded on 28 U.S.C. §§1331, 1343, 42 U.S.C. §1988, the constitutional provisions mentioned above, and under the tort law of Florida. Supplemental jurisdiction, and joinder of parties for additional state law claims is proper pursuant to 28 U.S.C. §1367(a) because they form part of the *same case or controversy*. Plaintiffs assert multiple state tort law claims.

3. In connection with the acts, practices and violations alleged below, the Defendants the CITY OF HALLANDALE BEACH, MICHAEL MCKENZIE, PAUL HEISER, MARC DUBUISSON and CHRISTOPHER ALLEN, have each, either directly or indirectly violated clearly established constitutional rights, as well as statutory and common law duties owed to each Plaintiffs.

4. All conditions precedent under Florida law for the filing of state law claims have been satisfied.

## Parties

5. The Plaintiff HOWARD BOWE, Sr., is the legal representative authorized to act on behalf of the decedent Howard Bowe, Jr., and at all times material hereto, has been a resident of Broward County, Florida, over the age of eighteen years and otherwise able to sue in his own capacity.

6. The Plaintiff BELINDA RAMOS, is the legal representative authorized to act on behalf of the decedent Howard Bowe, Jr., and at all times material hereto, has been a resident of Broward County, Florida, over the age of eighteen years and otherwise able to sue in her own capacity.

7. Plaintiff HOWARD BOWE III is now over 18 years of age, a Broward County resident and is *sui juris.*

8. Defendant CITY OF HALLANDALE BEACH is a municipal entity incorporated in the State of Florida whose boundaries are located wholly within Broward County. The Hallandale Beach Police Department (HBPD) is a subdivision of the CITY OF HALLANDALE BEACH, created and designated to provide law enforcement services subject the all Federal and State statutes and constitutional provisions.

9. DWAYNE FLOURNEY ("FLOURNEY") is the Chief of Police of the CITY OF HALLANDALE BEACH Police Department.  Defendant FLOURNEY is responsible for the officers in his employ, and ensuring that the officers, employees, servants and agents of the Hallandale Beach Police Department (HBPD) obey the laws of the State of Florida and the United States.  FLOURNEY is also the final policymaker responsible for all operational and investigative policies, training and supervision, practices, customs, and orders of the Hallandale Beach Police Department.

10. At all times material hereto the actions, policies, procedures, customs and/or practices of the Hallandale Police Department and FLOURNEY are one and the same as those of the CITY OF HALLENDALE BEACH.

11. Defendants MICHAEL MCKENZIE (MCKENZIE), PAUL HEISER (HEISER), MARC DUBUISSON (DUBUISSON) and CHRISTOPHER ALLEN (ALLEN) are all

duly appointed law enforcement officers of the Hallandale Beach Police Department, at all times material hereto acting under color of law, to wit: under the color of statutes, ordinances, regulations, policies, practices, customs and usages of the CITY OF HALLANDALE BEACH, FLOURNEY, and/or the State of Florida. Defendants MCKENZIE, HEISER, DUBUISSON and ALLEN are all being sued in their individual capacity.

## General Allegations

12. On May 8, 2014, at about 6:00AM members of the HBPD SWAT team executed a search warrant on Howard Bowe Jr.'s home.

13.  As the SWAT team approached the back door they encountered a 13 year-old dog owned by HOWARD BOWE III.  At the time of the shooting HOWARD BOWE III was 16 years-old.  Defendant MCKENZIE shot the dog with his 12-gauge shotgun. HEISER then shot the dog with his handgun.

14. Members of the SWAT team then ripped the home's back door open.  The HBPD Officer who was tasked with announcing that it was the HBPD at the door and that they had a search warrant did not announce the presence of the HBPD.

15. Howard Bowe Jr., who by his nature is an early riser and is always awake at six in the morning, was standing inside his home, wearing his underwear and facing the door with nothing in his hands when the SWAT team tore his door down.

16. Without giving any warning or ordering Howard Bowe Jr., to do anything Defendant MCKENZIE, who had just shot the dog and was now standing outside Howard Bowe Jr.'s door fired his shotgun again.  This blast from the shotgun went through Howard

Bowe Jr.'s right arm and at a downward angle into his abdomen.  Howard Bowe Jr. died in the hospital on May 19, 2014.

17. After Howard Bowe Jr. was shot Defendants ALLEN and HEISER went into HOWARD BOWE III's bedroom, pulled him from his bed, hit him, stomped on his back, placed him in handcuffs and then dragged him through the house and over his father who lay bleeding on the floor.

18. Defendants ALLEN and HEISER then dragged HOWARD BOWE III from his house and forced him to lay in the dirt with his hands cuffed behind his back.  After 20 minutes HOWARD BOWE III was placed into the back of a patrol car.

19. When HOWARD BOWE III's family members realized that he was cuffed and in the back of police car they demanded his release and put the HBPD officers who were holding him on notice that he was only 16 years old.  In response to the family's requests that HOWARD BOWE III be released the HBPD officers simply moved the car containing the child to a different location that was inside the area marked by crime scene tape and away from his family.

20. The HBPD officer who had HOWARD BOWE III handcuffed in her car then, as requested by Defendant DUBUISSON, drove HOWARD BOWE III to the police department.

21. HOWARD BOWE III's aunt, Cornessa Bowe, saw the police car with her nephew cuffed inside leave the crime scene and she followed the police car in her own car. When the police car entered the HBPD headquarters, Cornessa Bowe attempted to follow the car but the security gate closed in front of her car blocking her entrance and

an HBPD officer then drew his gun and told her that she had to leave and could not enter the area.

22. Cornessa Bowe then went around the front of the police department and though the front doors and demanded to see her 16 year old nephew.  Cornessa was threatened and dismissed by the HBPD employees in the lobby for an extended period of time until finally, after she had threatened to call various news organizations and report that the HBPD was illegally holding a child, she was allowed to see HOWARD BOWE III.

23. Defendant DUBUISSON attempted to interrogate HOWARD BOWE III after he had been held for several hours but Cornessa Bowe terminated the interrogation and left with her nephew.

### *The Use of Force: A Pattern of Abuse*

24. On December 4, 2011, Hallandale Officer Jamie Cerna stopped Kareem McDonald who was suspected of taking an 18-pack of beer from someone.  At the time of the stop Mr. McDonald was riding a bicycle and Officer Cernan pulled his police car in front of Mr. McDonald to effectuate the stop.  Officer Cerna exited his police car and ordered Mr. McDonald to raise his hands and Mr. McDonald complied.  At this point in time Mr. McDonald was still straddling his bike and was at least 20 feet away from Officer Cerna.  Officer Cerna then shot Mr. McDonald one time striking him in the arm.  Mr. McDonald was unarmed when he was shot.  Mr. McDonald was transported to the hospital.  The investigation into Officer Cerna's conduct is has not yet been completed by the HBPD but Officer Cerna was one of the SWAT team members who participated in the raid of Howard Bowe Jr's. home.

25.   On January 8, 2012, Gregory Ehlers was running from the police after he had stolen
     some electronics from a Best Buy.  Hallandale Officer Edward McGovern and others
     located and surrounded Mr. Ehlers who was hiding on the roof of a small building.
     Willis Morgan, who lived adjacent to the location where Mr. Ehlers was cornered,
     called 911 and reported a domestic violence incident because he heard somebody
     screaming, "don't shoot, don't shoot", and thought it was a woman begging for her
     life and that her husband was going to kill her.  After Mr. Ehlers' was begging not to
     be shot, Officer McGovern, shot Mr. Ehlers three times killing him.  Mr. Ehlers was
     not armed.

26.   On September 6, 2012, Eduardo Prieto, was stopped by Hallandale Officers Timothy
     Church, Brian Hubbert and Raymond Buckley after it was reported that Mr. Prieto
     had pulled a knife on a Walmart security guard who had confronted him for stealing
     some DVDs.  Once Mr. Prieto's car was stopped, according to a witness he put his
     hands outside the window and may have had a knife in his hand.  The three officers
     who were not in close proximity to Mr. Prieto's hands opened fire and killed him.
     The investigation into the shooting death of Mr. Prieto has not yet been completed by
     the HBPD but Officer Buckley was one of the SWAT team members who
     participated in the raid on Howard Bowe Jr's. home.

27.  On April 4, 2013, Travis Dixon was burgling a home when several Hallandale
     Officers responded and caught him in the act.  Mr. Dixon fled to his car that was
     parked in front of the home he was burglarizing.  At this point, Hallandale Officer
     Kevin Hebert, who was standing several feet away from the car and facing the
     driver's side window opened fire and shot Mr. Dixon several times.  At the time he

was shot Mr. Dixon was seated in the driver's seat.  Mr. Dixon was unarmed and survived the shooting.

28. On December 18, 2013, a federal jury returned a verdict finding that HBPD officer Josue Hernandez had subjected Kenneth Salazar to excessive and unreasonable force during an arrest in case 12-cv-61175.

29. The failure of Defendant CITY and FLOURNEY to competently investigate the use of force incidents in the above five paragraphs as well as other incidents of illegal acts of violence by HDBP officers, and to institute appropriate disciplinary and retraining action in the wake of them, serves to tacitly condone the egregious misconduct of the officers involved.  The City's inaction in this regard effectively annuls its official general orders regarding the use of force and substitutes in their place a permissive de facto custom and practice of tolerating excessive force, which will invariably have the effect of promoting similar misconduct by other officers in the future.  In sum, the pattern and practice of the excessive use of force on the part of HBPD officers stems from systemic deficiencies in training and supervision and from the inadequate investigation and routine ratification of the use of force including deadly and excessive force.

**COUNT 1:**
**42 U.S.C. §1983 VIOLATION OF PLAINTIFF'S CIVIL RIGHTS AS TO HOWARD BOWE JR.**
(MCKENZIE)

30. Plaintiff realleges paragraphs 1 through 16.

31. MCKENZIE's actions on the morning of May 8, 2014, occurred within the scope of his employment with HBPD and under color of state law and caused the death

of Howard Bowe Jr. on May 19, 2014.

32. MCKENZIE knew or should have known, and every reasonable officer in his position would have concluded, that there was no reason shoot Howard Bowe Jr. who was standing in his own home, in his underwear, unarmed and with both hands clearly visible.

33. MCKENZIE had a legal duty to use only that amount or degree of force against Howard Bowe Jr. as was reasonable and necessary under the circumstances. Pursuant to national police standards, and federal and state constitutional law, a police officer cannot use "excessive force," often defined as a level of force inappropriate to the circumstances, against members of the public.

34. On May 8, 2014, MCKENZIE used an excessive and unnecessary amount of force against Howard Bowe Jr., which was objectively unreasonable in light of the facts and circumstances confronting MCKENZIE and did not involve a rapidly evolving situation other than that created by MCKENZIE and the HBPD, particularly considering that (a) Howard Bowe Jr. was in his underwear and clearly not armed, (b) the alleged violation that originally brought MCKENZIE Howard Bowe Jr's home was a non-violent drug investigation, (c) Howard Bowe Jr. posed no immediate threat to the safety of MCKENZIE or any other person and no commands were ever given to Howard Bowe Jr. such as get on the ground; and (d) Howard Bowe Jr. was not actively resisting arrest or attempting to evade arrest by flight.

35. MCKENZIE knew or should have known, and every reasonable officer in that position would have concluded, that the force he used against Howard Bowe Jr.

was unlawful.

36. MCKENZIE violated Howard Bowe Jr's constitutional rights to be secure in his person, free from unreasonable seizure and from the use of excessive force.

37. These violations were of a type and character as to which any reasonable person would be aware, and further, the law prohibiting such conduct as unconstitutional is clearly established.

38. MCKENZIE acted knowingly, intentionally, and maliciously, and/or with a reckless or callous indifference to the federally protected rights of Howard Bowe Jr.

39. As a direct and proximate result of MCKENZIE's violation of Howard Bowe Jr's civil rights, Howard Bowe Jr. died an unnecessary and painful death over a period of eleven days.

   **WHEREFORE**, Plaintiff demands judgment against MCKENZIE for compensatory and punitive damages, costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and such other and further relief as the Court deems appropriate.

**COUNT 2:**
**42 U.S.C. § 1983 DEPRIVATION OF PLAINTIFF'S CIVIL RIGHTS AS TO HOWARD BOWE JR.**
**(CITY & HBPD)**

40. Plaintiff realleges paragraphs 1 through 16 and 24 to 39.

41. At all material times, FLOURNEY as police chief was responsible for HBPD, its agents and employees, including supervising, overseeing, training and establishing policies, customs and procedures to conform their conduct to the United States Constitution and Florida common law.

42.    At all times material hereto, FLOURNEY and the CITY was charged with the responsibility of adopting and implementing rules, policies, practices, customs, and procedures for the proper and efficient maintenance, supervision, and control of HBPD Officers. These duties include, but are not limited to:

(a)    To create, adopt, and implement rules and regulations, practices and procedures for the proper threat assessment that HBPD officers must engage in before they are justified in using force and deadly force.  The objective facts to be considered by the officer prior to the use of deadly force include:  the nature of the offense; the events that preceded the offense and the apparent dangerousness of the suspect's actions.  A reasonable threat assessment includes within the totality of the circumstances a close observation of the suspect's hands, since the hands of the suspect are the most likely source of potential danger to the officer;

(b)    To create, adopt, and implement rules, regulations, practices, and procedures, toward supervising, and retaining law enforcement officers who do not have a propensity towards violence and the excessive use of force and are properly trained in conducting a proper threat assessment before they use force;

(c)    To create, adopt, and implement rules and regulations, practices and procedures, for proper and efficient training of law enforcement officers in a way and to an extent necessary to ensure the utilization of a force continuum which prevents any propensity towards violence and excessive force, and which ensures that the least amount of force would be utilized to maintain order and control;

(d)    To create, adopt, and implement rules and regulations, practices, and procedures for the proper and efficient supervision, control, discipline, and assignment of law enforcement officers in a way and to an extent necessary to ensure that citizens will not be subjected to excessive force or unnecessary force by the agents and employees of the HBPD; and

(e)    To implement rules, regulations, policies, practices, and procedures for the proper and efficient supervision, discipline,

control, and investigation of law enforcement officers to reduce or eliminate instances of untruthfulness, including excessive force and instances of corroboration or ratification of untruthful accounts of excessive force events committed by fellow law enforcement officers.

43. FLOURNEY and CITY owed a legal duty to Howard Bowe Jr. to exercise reasonable care in training, and retaining safe and competent employees.

44. FLOURNEY and CITY has also, with deliberate indifference as to the possibility of Howard Bowe Jr's death, failed to adequately train or otherwise supervise and direct HBPD and its Officers concerning the rights of the citizens they encounter in their duties, such that it is a well-settled policy, practice, and custom for HBPD Officers, including MCKENZIE, to take extreme and reckless actions against people they encounter, including Howard Bowe Jr., all in the name of self-defense, resulting in "trigger happy" HBPD Officers killing and/or seriously injuring people.

45. FLOURNEY and CITY was on notice from the shootings of Kareem McDonald, Gregory Ehlers, Eduardo Prieto and Travis Dixon that his Officers were shooting unarmed men without legal justification.  The shooting of these four men along with other instances where HBPD Officers employed excessive force against individuals like Kenneth Salazar and others exhibited a history of widespread abuse, of the need to correct the well-settled policy, practice, and custom of his Officer's extreme and reckless actions against the people they encountered. This need for more or different training, epically in the area of conducting a reasonable threat analysis before the officer uses force has been obvious and the inadequacy of same, combined with CITY and FLOURNEY's conscious choice not to act,

has resulted in the violation of constitutional rights, including, but not limited to the deprivation of Howard Bowe Jr's civil rights.

46. FLOURNEY and CITY has, with deliberate indifference, either failed to direct, failed to otherwise fully require, or has sought to limit, HBPD and others in the proper investigation of the extreme and wanton acts of his Officers, such that it is the well-settled policy, practice, and custom of HBPD to limit internal investigations, with few or no serious questions ever raised as to an Officer's decision to use excessive force and/or deadly force. Despite knowing of this behavior and the need to take corrective action, FLOURNEY and CITY has declined to do so.

47. By limiting and/or failing to properly investigate, resulting in findings of no excessive force and the justification for Officers' extreme actions, by encouraging the well-settled policy, practice, and custom of using excessive force FLOURNEY and the CITY has ratified, condoned, and consented to his Officers' unlawful conduct, specifically including the unlawful conduct of MCKENZIE as to Howard Bowe Jr.  The ratification, condoning of, and consenting to, prior unlawful conduct of other Officers served as an inducement to MCKENZIE to violate Howard Bowe Jr.'s civil rights, and the ratification, condoning of, and consenting to the violation of Howard Bowe Jr.'s civil rights confirmed that MCKENZIE's conduct conformed with CITY and FLOURNEY's policy, practice, and procedure and the custom of the HBPD.

48. FLOURNEY and CITY was on notice of the history of failing to properly investigate (and thus address and correct) the extreme and wanton acts of his

Officers and failed to do so, leading to Howard Bowe Jr.'s deprivation of civil rights. The deprivation of civil rights, of which the circumstances described herein were a material part, together constituted a widespread pattern sufficient to notify FLOURNEY and CITY and were obvious, flagrant, rampant, and of continued duration rather than isolated occurrences.

49. The actions committed by MCKENZIE against Howard Bowe Jr. were proximately caused by the well-settled policies, customs, practices, and procedures of FLOURNEY and CITY in failing to fulfill their duties as alleged herein, which was also the moving force behind Howard Bowe Jr. having his civil rights violated.

50. As a direct and proximate result of CITY and FLOURNEY's actions and inactions, under color of state law, and in violation of 42 U.S.C. § 1983, Howard Bowe Jr. was shot and killed and thus was deprived of his constitutional rights to be secure in his person, free from unreasonable seizure and from the use of excessive force.

51. Plaintiffs, HOWARD BOWE Sr. and BELINDA RAMOS, as the co-personal representative of the estate of Howard Bowe Jr., claims damages for the wrongful death of Howard Bowe Jr. Said damages include: loss of the prospective net accumulations of an estate, which might reasonably have been expected but for his wrongful death, reduced to present money value as the survivors of the decedents' include lineal descendants, and for funeral and burial expenses under 42 U.S.C. §1983 and the Florida Wrongful Death Statute.

52.  As a direct and proximate result of the acts of Defendants, Plaintiffs HOWARD BOWE III surviving son, and NB, a minor surviving son and HB, a minor surviving daughter of the decedent, have sustained the following damages:

    a.  They have, in the past and will in the future, suffer great mental pain and suffering.

    b.  They have, in the past and will in the future, suffer the loss of parental companionship, instruction, and guidance.

    c.  They have, in the past and will in the future, be deprived of the support and services of their father, the decedent.


    **WHEREFORE**, Plaintiff demands judgment against CITY and HBPD for compensatory damages, costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and such other and further relief as the Court deems appropriate.


<u>**COUNT 3:**</u>
<u>**BATTERY OF HOWARD BOWE JR.**</u>
**(CITY & HBPD)**

53.  Plaintiff realleges paragraphs 1 and 4.

54.  Howard Bowe Jr. suffered a harmful and offensive contact when he was shot by MCKENZIE.

55.  MCKENZIE was acting in the scope of his employment with CITY and HBPD when he shot Howard Bowe Jr.

56.  MCKENZIE acted intentionally but not in bad faith or with malicious purpose or

in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

57.     Pursuant to Florida Statute 768.28(9), CITY & HBPD are vicariously liable, but MCKENZIE is not personally liable, for MCKENZIE's battery.

58.     As a direct and proximate result of MCKENZIE's battery, Howard Bowe Jr. was killed and his children have suffered the following damages:

    a.   They have, in the past and will in the future, suffer great mental pain and suffering.

    b.   They have, in the past and will in the future, suffer the loss of parental companionship, instruction, and guidance.

    c.   They have, in the past and will in the future, be deprived of the support and services of their father, the decedent.

       **WHEREFORE**, Plaintiff demands judgment against CITY and HBPD for compensatory damages, costs, and such other and further relief as the Court deems appropriate.

**COUNT 4:**
**42 U.S.C. § 1983 DEPRIVATION OF PLAINTIFF'S CIVIL RIGHTS THAT RESULTED FROM THE SWAT TEAMS FAILURE TO KNOCK AND ANNOUNCE**
**(CITY & HBPD)**

59. Plaintiff realleges paragraphs 1 through 16.

60. During the SWAT team raid the HBPD officers involved failed to take any reasonable steps to identify themselves as law enforcement.

61.  HBPD SWAT member, Detective Distefano, has stated under oath that he was the officer responsible for announcing the presence of police prior to breaking down the door and that he did not announce the presence of the officers and did not hear anyone else announce or give any commands to Howard Bowe Jr. before he was shot.

62. Howard Bowe Jr. did not posed an immediate threat against MCKENZIE or any member of the HBPD.

63. Howard Bowe was standing in his own home unarmed and in his underwear when he was shot by MCKENZIE.

64. This failure to announce by the HBPD SWAT team was objectively unreasonable.

65.  The wrongful acts described herein are what caused the condition that lead to the unnecessary death of Howard Bowe Jr.

66.  In other words, but for the unconstitutional conduct of Defendants, Howard Bowe Jr. would be alive and with his family today.

67.  As a direct and proximate result of the SWAT teams failure to announce their presence prior to ripping Howard Bowe Jr.'s back door from its frame Howard Bowe Jr. was killed and his children have suffered the following damages:

    a.  They have, in the past and will in the future, suffer great mental pain and suffering.

    b.  They have, in the past and will in the future, suffer the loss of parental companionship, instruction, and guidance.

    c.  They have, in the past and will in the future, be deprived of the support

and services of their father, the decedent.

**WHEREFORE**, Plaintiff demands judgment against CITY and HBPD for compensatory damages, costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and such other and further relief as the Court deems appropriate.

## COUNT 5
## BATTERY BY HEISER & ALLEN AGAINST HOWARD BOWE III.

68. Plaintiff realleges paragraphs 1, 4, 7, 8 and 11.

69. On May 8, 2014, HEISER and ALLEN were working as a police officers for Defendant CITY.

70. On the above date, HEISER AND ALLEN, did intentionally touch HOWARD BOWE III without his consent in an offensive manner by punching, stomping and pushing him.

**WHEREFORE,** Plaintiff HOWARD BOWE III, demands compensatory and punitive damages against HEISER AND ALLEN, costs, and trial by jury for all issues so triable by right.

## COUNT 6:
## BATTERY AS TO HOWARD BOWE III
## (CITY & HBPD)

71. Plaintiff realleges paragraphs 1, 4, 7, 8 and 11.

72. HOWARD BOWE III suffered a harmful and offensive contact when he punched, stomped and pushed by HEISER and ALLEN.

73.     HEISER and ALLEN were both acting in the scope of their employment.

74.     HEISER and ALLEN acted intentionally but not in bad faith or with malicious

purpose or in a manner exhibiting wanton and willful disregard of human

rights, safety, or property.

75.     Pursuant to Florida Statute 768.28(9), CITY and HBPD are vicariously

liable, but HEISER and ALLEN are not personally liable, for HEISER and

ALLEN's battery.

76.     As a direct and proximate result of HEISER and ALLEN's battery,

HOWARD BOWE III suffered physical and mental harm.


    **WHEREFORE,** Plaintiff, HOWARD BOWE III, demands judgment against

CITY and HBPD for compensatory damages, costs, and such other and further relief as

the Court deems appropriate.


### COUNT 7:
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST HEISER, ALLEN & DUBUISSON AS TO HOWARD BOWE III.

77.     Plaintiff realleges paragraphs 1, 4, 7, 8 and 11.

78.     On or about May 8, 2014, HEISER, ALLEN and DUBUISSON, were working as

a police officers for Defendant CITY.

79.     On said date, HEISER and ALLEN, did illegally detain HOWARD BOWE III and

drag him from his home over the body of his father Howard Bowe Jr, and then put

him in the dirt with his hands cuffed behind his back.

80.    On said date, HEISER and ALLEN, did intentionally touch HOWARD BOWE III
in an offensive manner and without the consent of HOWARD BOWE III during
this detention.

81.    On said date, DUBUSSION, did prevent HOWARD BOWE III, who was 16
years-old at the time, from having contact with his family and kept him illegally
detained for hours.

82.    The actions by HEISER, ALLEN and DUBUSSION did cause HOWARD BOWE
III severe emotional distress and during the several hour detention of HOWARD
BOWE III and it was obvious to said defendants that their actions were causing
HOWARD BOWE III severe emotional distress.


   **WHEREFORE**, Plaintiff HOWARD BOWE III, demands compensatory and
punitive damages against HEISER, ALLEN and DUBUISSON, costs, and trial by jury
for all issues so triable by right.


## COUNT 8
## FALSE ARREST/FALSE IMPRISONMENT CLAIM AS TO HOWARD
## BOWE III AGAINST DEFENDANT CITY & HBPD

83.    Plaintiff realleges paragraphs 1, 4, 7, 8, 11 and 76 to 82.

84.    Defendants, HEISER, ALLEN and DUBUISSON proximately caused
HOWARD BOWE III's arrest in the absence of probable cause that he had
committed any criminal offense.

85.    The conduct of Defendants HEISER, ALLEN and DUBUISSON towards
Plaintiff was unreasonable and unwarranted and without legal authority,

and constitutes false arrest/false imprisonment of Plaintiff under Florida law.

86.     The false arrest/false imprisonment of Plaintiff by Defendants HEISER, ALLEN and DUBUISSON was in the course and scope of their employment as a police officers for Defendant CITY.

87.     As a direct and proximate result of the acts described above, Plaintiff suffered grievously, with great humiliation and mental suffering.

88.     As a further direct and proximate result of the conduct of Defendants HEISER, ALLEN, DUBUISSON, CITY and HBPD, Plaintiff suffered loss of his liberty and freedom, bodily injury and resulting pain and suffering, expense of hospitalization and medical care and treatment.  The losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's rights under Florida law.

**WHEREFORE**, Plaintiff HOWARD BOWE III, demands compensatory damages against CITY and HBPD, costs, and trial by jury for all issues so triable by right.

<u>COUNT 9</u>
<u>FALSE ARREST/FALSE IMPRISONMENT CLAIM AS TO
HOWARD BOWE III AGAINST DEFENDANTS HEISER,
ALLEN and DUBUISSON, INDIVIDUALLY</u>

89.     Plaintiff realleges paragraphs 1, 4, 7, 8, 11 and 76 to 82.

90.     Defendants HEISER, ALLEN and DUBUISSON proximately caused Plaintiff's arrest in the absence of probable cause that Plaintiff committed any criminal offense.

91.     The conduct of Defendants HEISER, ALLEN and DUBUISSON towards Plaintiff was unreasonable and unwarranted and without legal authority, and constitutes false arrest/false imprisonment of Plaintiff under Florida law.

92.     Alternatively to the allegations set forth in Count 8, if the false arrest/false imprisonment of Plaintiff by Defendants HEISER, ALLEN and DUBUISSON occurred outside the course and scope of their employment or was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, then the false arrest/false imprisonment of Plaintiff was committed by Defendants HEISER, ALLEN and DUBUISSON in their individual capacity.

93.     As a direct and proximate result of the conduct of Defendants HEISER, ALLEN and DUBUISSON, Plaintiff suffered loss of his liberty and freedom, bodily injury and resulting pain and suffering, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical care and treatment.  The losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's rights under Florida law.

**WHEREFORE**, Plaintiff HOWARD BOWE III, demands compensatory and punitive damages against HEISER, ALLEN and DUBUISSON, costs, and trial by jury for all issues so triable by right.

## COUNT 10:
## 42 U.S.C. §1983 VIOLATION OF PLAINTIFF'S CIVIL RIGHTS AS TO HOWARD BOWE III.
### (HEISER, ALLEN)

94.     The averments of paragraphs 1, 4, 7, 8, 11 and 17-23 are repeated herein.

95.     This cause of action is brought by HOWARD BOWE III against HEISER and ALLEN for deprivation of constitutional rights within the meaning of 42 U.S.C. § 1983.

96.      While HEISER and ALLEN were acting under the authority of the State of Florida and under color of law as a police officer in the employ of Defendant CITY and HBPD, they subjected HOWARD BOWE III to the deprivation of the rights and privileges secured to him by the Constitution of the United States including the constitutional right not to be subjected to unreasonable and excessive force under the United States Constitution, including the Fourth Amendment, within the meaning of 42 U.S.C. § 1983.

97.     As a direct and proximate result of the conduct of Defendants HEISER and ALLEN, Plaintiff suffered loss of his liberty and freedom, bodily injury and resulting pain and suffering, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical care and treatment. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

        **WHEREFORE**, Plaintiff HOWARD BOWE III, demands compensatory and punitive damages against HEISER and ALLEN, costs, and trial by jury for all issues so triable by right.


Dated:        5/08/16

Respectfully submitted,

<u>ATTORNEYS FOR</u>
<u>PLAINTIFFS</u>
Greg Lauer, Esq.
Lauer & Currie, P.A.
644 Se 5 Avenue
Fort Lauderdale, Fl 33301
Phone:(954) 533-4498
Facsimile:   (954) 533-4501


By:   <u>S/Greg M. Lauer</u>
Greg M. Lauer
Fla. Bar No. 652709
*greg@law-lc.com*

Christina   Currie,   Esq.
Lauer & Currie, P.A.
644 Se 5 Avenue
Fort Lauderdale, Fl 33301
Phone:(954) 533-4498
Facsimile:   (954) 533-4501


By:  S/<u>Christina M. Currie</u>
Christina M. Currie Fla. Bar
No. 90987    *cmc@law-lc.com*


<u>By:  s/David Frankel</u>
Fla. Bar No. 741779
Law Offices of David A. Frankel, P.A.
20 SE 20th St Fort Lauderdale,
FL 33316-2845
Office: 954-683-0300
david@bluelotuslaw.com